UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ASSOCIATION OF COURT SECURITY OFFICERS OF CONNECTICUT,     Plaintiff, | : : : : : | CIVIL CASE NO. 3:10-cv-00764 (JCH) |
| v. | : : | |
| AKAL SECURITY, INC.     Defendant. | : : | OCTOBER 20, 2010 |

**RULING ON PLAINTIFF'S MOTION TO COMPEL ARBITRATION (DOC. NO. 14)**

**I.      INTRODUCTION**

Plaintiff, the Association of Court Security Officers of Connecticut (hereinafter, the "Union"), is a union representing court security officers ("CSOs") covering the United States District Court for the District of Connecticut.  Defendant, Akal Security, Inc. ("Akal"), is an employer of CSOs represented by the Union.  The Union brought this action on behalf of CSO Ralph DiNello, who has not been permitted to return to work following a medical leave.  The Union contends that this is a violation of the Collective Bargaining Agreement between the parties and that it gives rise to an arbitrable grievance.  Akal claims that the decision to clear CSO DiNello to return is within the sole discretion of the U.S. Marshal Service, and that therefore this dispute is outside the scope of the parties' arbitration agreement.

In its Motion to Compel Arbitration, the Union seeks an order that would bind the parties to an arbitrator's determination of whether this dispute is subject to arbitration. Plaintiff's Memorandum at 5 ("[T]he sole issue presented here is whether or not the

issue of arbitrability of the DiNello grievance ought to be left to the arbitrator."). For the following reasons, the Union's Motion is denied. The issue of arbitrability should be submitted to the court.

## II. BACKGROUND

The Complaint provides that, in 2006, the parties entered into a collective bargaining agreement (the "CBA").[1] Article 5 of the CBA provides a procedure for resolving certain employee grievances. Section 5.3 requires the employee and the union to take certain informal dispute resolution measures, and section 5.4 provides that "[g]rievances processed in accordance with the requirements of section 5.3 that remain unsettled may be processed to arbitration by the Union . . . ."

The CBA defines the types of "grievance" to which these procedures apply:

> For purposes of this Agreement, a grievance shall mean a claimed violation, misinterpretation, or misapplication of any provision of this Agreement, or the challenge of any disciplinary action taken against a Union Employee, except that this grievance procedure shall not be used for any action or order of removal of an Employee from working under the contract by the U.S. Government, or revocation of required CSO credentials by the USMS under the removal of contractor employee provision in section H-3 of contract MS-03-D-0002 or its successor between the US Marshal Service, members of the Judiciary and Akal Security, Inc. . . . . In addition, the grievance procedures outlined herein shall not apply to any non-disciplinary situation where the company is acting under express directives of the USMS.

CBA § 5.1. In short, the grievance procedures, including arbitration, do not apply in certain situations where an employee is not permitted to work because of an action or

---

[1] The copy of the CBA attached to the Complaint is not executed and, by its terms, was in effect only until September 30, 2009. See Complaint, Exh. A, at 25-26. However, neither party disputes that this copy contains the binding and operative language relevant to this dispute.

directive of the U.S. Government or the U.S. Marshal Service. In such instances, the CBA indicates that "[t]he 'final decision' on the employee's removal shall be determined by the Government." CBA § 5.1.

On March 10, 2010, the Union submitted a grievance on behalf of CSO DiNello. The statement of that grievance indicates that CSO DiNello had been placed on medical leave in or around December 2008 and that he has not been permitted to return although he has been cleared to return by his doctor on more than one occasion. See Complaint, Exhs. B &C. On March 24, 2010, Akal responded, stating that "the USMS must medically clear CSO DiNello such that he meets the minimum medical standards. As this credential is the sole right of the USMS, Akal cannot return CSO DiNello to performing duties on the contract absent USMS approval." Complaint, Exh. D. Akal further claimed that "the matter is explicitly excepted from the grievance procedure; thus, it is neither grievable nor arbitrable." Id. An appeal of this response to Akal's Director of Human Resources did not resolve the matter to the Union's satisfaction.

III.   DISCUSSION

    A.   **Jurisdiction**

The Complaint does not expressly indicate the basis for jurisdiction in this court. There are no allegations expressly relating to jurisdiction, and the Complaint states that relief is sought under Connecticut General Statutes, Sections 52-410 and 52-411. However, the Complaint does allege that this is a dispute between a union and an employer pursuant to a collective bargaining agreement. In their memoranda, the

parties agree that this court has jurisdiction pursuant to section 301 of the Labor Management Relations Act (LMRA), which provides that "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a). See Plaintiff's Mem. at 2; Defendant's Opposition at 3.

### B. Legal Standard

There appears to be disagreement between the parties about the source of law governing this matter. The Union relies heavily on cases decided under state law and under the Federal Arbitration Act (FAA). However, as Akal notes, federal common law governs in cases under section 301 of the LMRA. See Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 456 (1957) ("[T]he substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws."); Coca-Cola Bottling Co. v. Soft Drink and Brewery Workers Union Local 812, 242 F.3d 52, 54 (2d Cir. 2001) ("Coca-Cola's action invoked our federal question jurisdiction under Section 301. . . . Coca-Cola's action is thus based on a body of federal law analytically distinct from the FAA. It may be, of course, that the body of law developed under Section 301 will at times draw upon provisions of the FAA, but by way of guidance alone.") (citations omitted).

The Supreme Court has articulated a number of principles to resolve motions to compel arbitration in cases arising under the LMRA. See, e.g., AT&T Techs., Inc. v. Commc'ns Workers of America, 475 U.S. 643 (1986); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960). These cases address the question of who

determines whether a dispute is arbitrable. "[T]he question of arbitrability–whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance–is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Techs., 475 U.S. at 649 (quoting Warrior & Gulf, 363 U.S. at 582-83); see also John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547-48 (1964); Constr. Indus. Emp'rs Assoc. v. Local Union No. 210, 580 F.3d 89, 94 (2d Cir. 2009).

These cases also set forth the standard under which a court determines whether a dispute is arbitrable. "[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" AT & T Techs., 475 U.S. at 650 (quoting Warrior & Gulf, 363 U.S. at 582-83); see also Coca-Cola Bottling, 242 F.3d at 56-57.

 **C. Application**

The issue presented by the Union's Motion is whether an arbitrator should decide whether this dispute is arbitrable. See Plaintiff's Mem. at 2 ("The plaintiff thus brings this motion to compel arbitration, claiming that the issue of arbitrability is one which ought to be left to the arbitrator.") & 5 ("[T]he sole issue presented here is whether or not the issue of arbitrability of the DiNello grievance ought to be left to the arbitrator."). In support of its position, the Union seeks to invoke a presumption in favor

of arbitration.  See Plaintiff's Mem. at 3 ("[A]ll doubts [should be] resolved in favor of consigning the issue of arbitrability to the arbitrators for decision.").  Yet, as the cases cited by the Union show, the presumption in favor of arbitration applies to the issue of arbitrability itself, not to the question of who decides whether a dispute is arbitrable.  See AT&T Techs., 475 U.S. at 649 ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."); see also Bell v. Cendant Corp., 293 F.3d 563, 565 (2d Cir. 2002) (Under the FAA, "where the ambiguity relates to who determines arbitrability-that is, the arbitrability of the question of arbitrability-the Act's presumption is reversed and a court ordinarily decides the question.").

The arbitrability of the DiNello grievance must be determined by the court unless the agreement between the parties "clearly and unmistakably" provides otherwise.  See AT&T Techs., 475 U.S. at 649.  Here, the CBA includes an agreement to arbitrate a defined category of grievances and specifically exempts certain kinds of disputes from this category.  There is nothing in the CBA to indicate that the parties intended to have an arbitrator determine whether or not a particular dispute falls within the arbitration provision or not.  The CBA is simply silent in this regard.  Because there is "no language in the CBA . . . indicating that the parties clearly and unmistakably agreed to settle disputes of arbitrability through arbitration," the arbitrability of the DiNello grievance is for the court decide.  Constr. Indus. Emp'rs, 580 F.3d at 94.

The Union relies on Congress Constr. Co. v. Geer Woods, Inc., 05-cv-1665 (MRK), 2005 U.S. Dist. LEXIS 38895 (D. Conn., Dec. 29, 2005), where the court held that an arbitrator should determine whether or not the parties agreed to arbitrate the

-6-

issue of consequential damages.  Congress Construction was not an LMRA case and, therefore, was not decided under the federal common law that applies here.  Moreover, the court in Congress Construction provided two grounds for its decision, neither of which is applicable here.  First, the agreement there called for arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and those rules expressly provide that the arbitrator has authority to rule on the scope of his or her own jurisdiction.  Id. at *5-*6.  Here, the CBA contains no reference to such arbitration rules.  Second, in Congress Construction, the parties' agreement called for arbitration of "any Claim arising out of or related to the Contract," including any "demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract."  Id. at *9-*10 (emphasis added by the court in Congress Construction).  The court followed Second Circuit precedent treating similar language as "such a 'broad grant of power to the arbitrators' as to evidence the parties' clear 'intent to arbitrate issues of arbitrability.'"  Id. at *11 (quoting The Shaw Group v. Triplefine Intern. Corp, 322 F.3d 115, 121 (2d Cir. 2003)).  There is no comparable language in the arbitration provision here.  The CBA simply provides that a specifically defined and delimited class of "grievances" may be submitted to arbitration.

Although arbitrability is to be determined by the court, the court does not reach that issue here.  The arbitrability of the DiNello grievance is not within the "sole issue presented" by the Union's Motion.  See Plaintiff's Mem. at 5.  Even if the court were asked to reach this issue, it does not appear that a decision could be made on the record currently before the court.  The Union states that Akal has not substantiated its

claim that the exception to the arbitration agreement applies.  <u>See</u> Plaintiff's Mem. at 3. And Akal invokes its contract with the U.S. Marshal Service, but that contract has not been presented to the court.  It appears, therefore, that the application of the arbitration agreement to this case presents an issue that the court is not yet in a position to resolve.

## V.     CONCLUSION

For the foregoing reasons, plaintiff's Motion to Compel Arbitration (Doc. No. 14) is **DENIED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 20th day of October, 2010.

     /s/ Janet C. Hall
Janet C. Hall
United States District Judge